United States District Court
Eastern District of New York

1:17-cv-5191(ARR)(MRL)

Josh Davis, individually and on behalf
of all others similarly situated,

                              Plaintiff,

             - against -

The Hain Celestial Group, Inc. and Hain
Blueprint, Inc.,

                           Defendants


# MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION
## <u>TO DISMISS THE FIRST AMENDED COMPLAINT</u>


Levin-Epstein & Associates, P.C.
1 Penn Plaza, Suite 2527
New York, NY 10119
Tel: (212) 792-0046

Sheehan & Associates, P.C.
891 Northern Blvd., Suite 201
Great Neck, NY 11021
Tel: (516) 303-0552

Counsel for Plaintiff

Table of Contents

TABLE OF AUTHORITIES ........................................................................................II

INTRODUCTION ................................................................................................... 1

I.     CONSUMER DECEPTION CLAIMS ARE MORE THAN ADEQUATELY
PLED .......................................................................................................... 1

       A.   Cold Pressed Juice is Misleading because it is Used as the Product's
Name ................................................................................................ 2

       B.   The "Made With" Food Labeling Cases are Inapposite ........................... 4

       C.   The Products Inadequately Disclose the Second Production Step ....................... 6

       D.   Non-Cold Pressed and Heat Pasteurized Citrus Juices Renders "Cold
Pressed" and "Never Heated" Misleading ............................................... 7

       E.   Raw and "Manifreshto" are Misleading ................................................. 9

       F.   The Trademark Cases Relied on by Defendants Buttress Plaintiff's
Argument ......................................................................................... 12

       G.   The Fraud Claims are Viable ............................................................... 13

II.    THE FAC PLAUSIBLY ALLEGES DECEPTION BASED ON
PREDOMINANT INGREDIENTS IN SEVERAL VARIETIES ..................................... 14

III.   DEFENDANTS' CHARACTERIZE LEGAL ARGUMENT AS JUDICIAL
ADMISSIONS ............................................................................................. 17

IV.   PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF ................................. 18

CONCLUSION ...................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Coca-Cola Co.*,
   No. 09-cv-00395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010) ................................................ 3

*Ackerman v. Coca-Cola Co.*,
   No. 09-cv-395, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ................................................ 19

*Belfiore v. Procter & Gamble Co.*,
   No. 14-cv-4090, 311 F.R.D. 29,
   2015 WL 5781541 (E.D.N.Y. Oct. 5, 2015) ........................................................................ 11

*Delgado v. Ocwen Loan Servicing, LLC*,
   No. 13-cv-4427, 2014 WL 4773991 (E.D.N.Y. Sept. 24, 2014) ............................................ 7

*Dependable Sales & Service, Inc. v. Truecar, Inc.*,
   No. 15-cv-1742, 2016 WL 79992 (S.D.N.Y. Jan. 6, 2016) .................................................... 12

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ................................................................................................. 11

*Foman v. Davis*,
   371 U.S. 178 (1962) ............................................................................................................. 19

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
   8 F.Supp.3d 467 (S.D.N.Y. 2014) .......................................................................................... 8

*Goshen v. Mutual Life Ins. Co. of N.Y.*,
   774 N.E.2d 1190, 98 N.Y.2d 314 (2002) ............................................................................... 1

*Gubala v. CVS Pharmacy, Inc.*,
   No. 14-cv-9039, 2016 WL 1019794 (N.D. Ill. Mar. 15, 2016) ............................................... 2

*Henderson v. Gruma Corp.*,
   No. 10-cv-04173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ............................................ 3

*In re: 100% Grated Parmesan Cheese Marketing & Sales Practices Litig.*,
   MDL No. 2705, No. 16-cv-5802,
   2017 WL 3642076 (N.D. Ill. Aug. 24, 2017) ......................................................................... 3

*Kacocha v. Nestle Purina Petcare Co.*,
   No. 15-cv-5489, 2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016) .............................................. 5

*Koch v. Greenberg*,
   14 F.Supp.3d 247 (S.D.N.Y. 2014) ........................................................................................ 4

*Koehler v. Litehouse, Inc.*,
    No. 12-cv-04055, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) ............................................ 19

*Koenig v. Boulder Brands, Inc.*,
    995 F.Supp.2d 274 (S.D.N.Y. 2014) .......................................................................................... 7

*Langan v. Johnson & Johnson Consumer Companies*,
    95 F.Supp.3d 284 (D. Conn. 2015) ............................................................................................ 8

*Lonner v. Simon Prop. Grp., Inc.*,
    866 N.Y.S.2d 239 (2d Dept. 2008) ............................................................................................ 6

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015) ............................................................................................... 19, 20

*Manchouck v. Mondelez Int'l Inc.*,
    No. 13-cv 02148, 2013 WL 5400285
    (N.D. Cal. Sept. 26, 2013), *aff'd*, 603 F. App'x 632 (9th Cir. 2015) ....................................... 3

*Mantikas v. Kellogg Co.*,
    No. 16-cv-02552, 2017 WL 2371183 (E.D.N.Y. May 31, 2017) ............................................. 4

*Marketplace LaGuardia Ltd. P'Ship v. Harkey Enterprises, Inc.*,
    No. 07-cv-1003, 2008 WL 905188 (E.D.N.Y. Mar. 31, 2008) ............................................... 18

*Maurizio v. Goldsmith*,
    84 F. Supp. 2d 455 (S.D.N.Y. 2000) ....................................................................................... 18

*McKinnis v. Kellogg USA*,
    No. 07-cv-2611, 2007 WL 4766060
    (C.D. Cal. Sept. 19, 2007) ....................................................................................................... 12

*New York State Nat'l Org. for Women v. Terry*,
    159 F.3d 86, 97 n. 7 (2d Cir.1998) .......................................................................................... 17

*NML Capital, Ltd. v. Republic of Argentina*,
    No. 05-cv-2434, 2009 WL 1528535
    (S.D.N.Y. May 29, 2009) ........................................................................................................... 9

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
    85 N.Y.2d 20 (1995).................................................................................................................. 1

*Red v. Kraft Foods, Inc.*,
    No. 10-cv-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012)................................................ 4

*Reynolds v. Wal-Mart Stores, Inc.*,
    No. 4:14-cv-381, 2015 WL 1879615
    (N.D. Fla. Apr. 23, 2015) ........................................................................................................ 16

*Rooney v. Cumberland Packing Corp.*,
No. 12-cv-0033, 2012 WL 1512106
(S.D. Cal. Apr. 16, 2012) ................................................................................... 13

*Rosen v. Brookhaven Capital Management, Co., Ltd.*,
194 F. Supp. 2d 224 (S.D.N.Y. 2002) ................................................................ 17

*Segedie v. Hain Celestial Grp., Inc.*,
No. 14-cv-5029, 2015 WL 2168374 (S.D.N.Y. May 7, 2015) .............................. 8

*Sims v. First Consumers Nat. Bank*,
303 A.D. 2d 288, 758 N.Y.S. 2d 284
(1st Dept. 2003) .................................................................................................... 2

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
No. 14-cv-3826, 2015 WL 5579872
(E.D.N.Y. Sept. 22, 2015) ..................................................................................... 6

*Union Pacific Railroad Co. v. Ore-Ida Potato Products*,
252 F.2d 505 (9th Cir. 1958) ............................................................................... 12

*United States ex rel. Polansky v. Pfizer, Inc.*,
No. 04-cv-0704, 2009 WL 1456582 (E.D.N.Y. May 22, 2009) ...................... 13

*Verizon Directories Corp. v. Yellow Book USA, Inc.*,
309 F.Supp.2d 401 (E.D.N.Y. 2004) .................................................................. 11

*Williams v. Gerber Prods Co.*,
552 F.3d 934 (9th Cir. 2008) ................................................................................ 3

*Wilson v. Frito-Lay N. Am., Inc.*,
No. 12-cv-1586, 2013 WL 1320468
(N.D. Cal. Apr. 1, 2013) ........................................................................................ 8

*Workman v. Plum Inc.*,
141 F.Supp.3d 1032 (N.D. Cal. 2015) ...................................................... 3, 15, 17

**Other Authorities**

56 Fed. Reg. 127, 30452,
Common or Usual Name for Nonstandardized Foods
(July 2, 1991) (21 CFR Parts 101 and 102) ................................................. 14, 15

58 Fed. Reg. 3, 2401,
Terms that Describe Other Aspects of Food: "Fresh" and Related Terms
(Jan. 3, 1993) (21 C.F.R. § 101.95) ...................................................................... 9

58 Fed. Reg. 3, 2897,
  Common or Usual Name for Nonstandardized Foods
  (Jan. 3, 1993) (21 CFR Parts 101 and 102) ............................................................ 14

Compliance Policy Guide Sec. 562.450,
  Identity of Foods - Use of Terms Such as Fresh, Frozen, Dried, Canned, Etc. ........................ 2

**Regulations**

21 C.F.R. § 101.17(g)(7) ............................................................................................ 11

21 C.F.R. § 101.3(b) .................................................................................................. 12

21 C.F.R. § 101.95(a) .................................................................................................. 9

**Statutes**

N.Y. Gen. Bus. Law § 349 ...................................................................................... 1, 11

N.Y. Gen. Bus. Law § 350 ........................................................................................... 1

**INTRODUCTION**

Plaintiff Josh Davis ("plaintiff") on behalf of himself and all others similarly situated, by attorneys, respectfully submits this memorandum of law in opposition to the motion of Hain Celestial Group, Inc. ("defendant Hain") and Hain Blueprint, Inc. ("defendant Hain BluePrint") (collectively, "defendants") to dismiss the First Amended Complaint ("FAC") [Dkt. No. 11]. See Motion to Dismiss ("Motion") [Dkt. 15], Memorandum of Law in Support ("Def. Mem.") [Dkt. 15-1], Request for Judicial Notice ("RJN") [Dkt. 15-2] and Exhibits A-F annexed [15-3 –15-8].

The FAC asserts that the Products' representations violate Sections 349 and 350, respectively, of the New York General Business Law ("GBL"), prohibiting "[d]eceptive acts or practices" and "[f]alse advertising." FAC, ¶¶ 97-107.

For the reasons below, the motion is without merit, and should be denied it in its entirety.

**I.     CONSUMER DECEPTION CLAIMS ARE MORE THAN ADEQUATELY PLED**

The purpose of GBL Sections 349 and 350 is "to secure an 'honest market place' where 'trust,' and not deception, prevails." *Goshen v. Mutual Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195, 98 N.Y.2d 314, 324 (2002) (citation omitted). To state a claim pursuant to Sections 349 and 350, a plaintiff must allege that: (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff was injured as a result. *See, e.g.*, *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995). Whether a particular act or practice is deceptive is intensely-factual, and, therefore, motions to

dismiss are disfavored. *See, e.g.*, *Sims v. First Consumers Nat. Bank*, 303 A.D. 2d 288, 289, 758 N.Y.S. 2d 284, 285-286 (1st Dept. 2003).

    A.  <u>Cold Pressed Juice is Misleading because it is Used as the Product's Name</u>

    Defendants mischaracterize the FAC, which alleges that the products should not be *named* cold pressed juice because that does not describe the Products in their final consumable form as opposed to their condition at an intermediate stage of production.  Contrast Def. Mem. At 12 ("Plaintiff's argument boils down to this: the term "cold pressed" should be (re)defined as "cold pressed without any pressurized treatment to fight off dangerous pathogens.") with FAC, ¶ 101, 110 ("identified in their final form as "Cold Pressed Juice").

    The FAC is clear that "cold pressed" is misleading because it is used "in the precise spot consumers are accustomed to seeing the truthful and non-misleading product name, [so that] it is understood not as just another fact, but as what the product is."  FAC, ¶¶ 43-45, 57 ("canned grapefruit juice was at one-point fresh grapefruit juice, but to avoid deception, it bears the name as it exists as a final consumable product."); Compliance Policy Guide ("CPG") Sec. 562.450, Identity of Foods - Use of Terms Such as Fresh, Frozen, Dried, Canned, Etc. (advising packers of grapefruit juice that "modifying terms" such as "pasteurized, canned, or otherwise processed" are required where the products are "refrigerated and displayed under conditions which implied it was fresh."); compare *Gubala v. CVS Pharmacy, Inc.*, No. 14-cv-9039, 2016 WL 1019794, at *28 (N.D. Ill. Mar. 15, 2016) (concluding that "a reasonable person might be misled by the Product name [Whey Protein] into believing that the Product contains only one kind of *protein* (whey protein) to the exclusion of other proteins (or more accurately, protein-like substances that are used

in place of actual proteins).") and *Ackerman v. Coca-Cola Co.*, No. 09-cv-00395, 2010 WL 2925955, at \*27 (E.D.N.Y. July 21, 2010) (finding that a products name, "vitaminwater," could be misleading because it "references only two of vitaminwater's ingredients, omitting the fact that there is a key, unnamed ingredient in the product," which was sugar) with *Henderson v. Gruma Corp.*, No. 10-cv-04173, 2011 WL 1362188, at \*12 (C.D. Cal. Apr. 11, 2011) ("With Garden Vegetables" not misleading where guacamole dip contained vegetables which could be grown in a garden) and *Manchouck v. Mondelez Int'l Inc.*, No. 13-cv 02148, 2013 WL 5400285, \*3 (N.D. Cal. Sept. 26, 2013), *aff'd*, 603 F. App'x 632 (9th Cir. 2015) ( "Made with Real Fruit" not misleading because the products contained fruit, albeit in the puree form).

According to defendants, if "cold-pressed" is "arguably ambiguous, a reasonable consumer should review the entire packaging" because the other statements would clarify any ambiguity, thus defeating a claim for deception. Mem. at 14 citing *Workman v. Plum Inc.*, 141 F.Supp.3d 1032, 1033 (N.D. Cal. 2015) (front label vignette depicting pumpkin, quinoa and yogurt as main components of product fails "at the threshold" because ingredient list discloses that mostly consisted of "apple, pear or banana puree.") and *In re: 100% Grated Parmesan Cheese Marketing & Sales Practices Litig.*, MDL No. 2705, No. 16-cv-5802, 2017 WL 3642076, at \*5 (N.D. Ill. Aug. 24, 2017) (while a reasonable consumer, lulled into a false sense of security by an unavoidable interpretation of an allegedly deceptive statement, may rely upon it without further investigation, consumers who interpret ambiguous statements in an unnatural or debatable manner do so unreasonably if an ingredient label would set them straight."); *Williams v. Gerber Prods Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) ("We do not think that the FDA requires an ingredient list so that

3

manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.").

Though defendants had no duty to disclose anything related to the production method, once it represented the products as "cold-pressed," it was required not to "give only half of the truth." *Koch v. Greenberg*, 14 F.Supp.3d 247, 258 (S.D.N.Y. 2014) ("Under New York law, silence or omission with respect to a material fact can serve as the equivalent of an affirmative misrepresentation where…the party has made a partial or ambiguous statement, on the theory that once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth" citing *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). FAC, ¶ 110.

## B.  The "Made With" Food Labeling Cases are Inapposite

Defendants reliance on the body of food labeling cases where products claim to be "made with" or "made from" certain ingredients is misplaced for at least four reasons.  First, they present situations that are mutually exclusive: either a product has an ingredient, or it does not, and such can be conclusively determined by their ingredient list.  *Mantikas v. Kellogg Co.*, No. 16-cv-02552, 2017 WL 2371183, at *4-5 (E.D.N.Y. May 31, 2017) (allegations that labels for crackers that said "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN" not misleading because they contained whole grain).

Second, these cases describe an added <u>feature</u> of a product, which by definition does not even belong there.  *Red v. Kraft Foods, Inc.*, No. 10-cv-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) ("Made with Real Vegetables" not misleading because crackers are crackers).

4

Third, the "cold pressed juice" claim relates to a processing mechanism which alters the composition of the products.  Food products exist along a continuum, where each production step modifies what came before it.  For instance, the crushing of grapes results in grape juice, which when left unattended, will ferment and become a rudimentary wine.  Once the now fermented juice, or wine, is exposed to air, it will transition to vinegar.  Yet vinegar, wine and grapes are three distinct foods and their names reflect that.  While the Products consumed may have been cold pressed juice if sold to consumers immediately after being cold pressed, by the time they reached the marketplace they had already been treated with pressure Pascalization.  *Kacocha v. Nestle Purina Petcare Co.*, No. 15-cv-5489, 2016 WL 4367991, at *38-39 (S.D.N.Y. Aug. 12, 2016) (To accept plaintiff's argument "would be to conclude not that no reasonable consumer would believe there was bacon in the product (there was), but, with far more nuance, that no reasonable consumer would believe there to be quite so much.").

Fourth, "Cold Pressed Juice" is misleading because juice which is first cold pressed and then treated through high pressure processing/Pascalization is marketed as "High Pressure Processed."  FAC, ¶ 38 (see images of competitor products where cold pressed is non-misleadingly applied, away from "juice"); *Rooney*, 2012 WL 1512106, at *7 ("Given the clear labeling of Defendants' product as turbinado sugar and the common industry marketing of turbinado sugar as raw cane sugar, Plaintiff's allegations are without merit.") (emphasis added).

Here, the difference between juice which has only been cold-pressed and juice which undergoes Pascalization treatment is one of degree and not kind – the FAC does not allege that plaintiff thought the juice he purchased was actually coffee or a milk shake.

C.  The Products Inadequately Disclose the Second Production Step

Though defendants assert the Products undergo "High Pressure Pascalization," those words admittedly do not appear anywhere on the labels.  Mem. At 9 citing FAC, ¶ 37.  Instead of offering clear unambiguous disclosures, defendants argue plaintiff and reasonable consumers were obligated to read every word up until to the second to last line on one of the four, text-laden panel's purported disclaimers – that it uses "pressure instead of heat to keep our beverages raw and safe". FAC, ¶¶ 37, 58; Def. Mem. At 8; *Lonner v. Simon Prop. Grp., Inc.*, 866 N.Y.S.2d 239, 247 (2d Dept. 2008) (denying motion to dismiss deceptive business practices claim under N.Y. Gen. Bus. Law § 349 based on "the inadequate font size in which the [gift card's] dormancy fee provision was printed"); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-cv-3826, 2015 WL 5579872, at *32 (E.D.N.Y. Sept. 22, 2015) (stating "the significance of a disclaimer depends upon factors such as the font size and placement of the disclaimer as well as the relative emphasis placed on the disclaimer and the allegedly misleading statement" "the mere inclusion of an accurate disclaimer does not necessarily cure other potentially misleading statements or representations set forth in a label or advertisement.")

Defendants' disclaimers fail because in addition to their lack of proximity to the offending claims on the front label, they are ambiguous at best, since it uses "pressure" as the operative term to describe the expression and processing steps, without indicating where one ends and the other begins. FAC.  ¶¶ 52-53 ("The BluePrintMethod applies tons of hydraulic pressure to get the most out of our organic fruits and vegetables," while simultaneously stating the products are "Never Heated" and that "BluePrint uses pressure instead of heat to keep our beverages raw and safe.);

*Delgado v. Ocwen Loan Servicing, LLC*, No. 13-cv-4427, 2014 WL 4773991, at \*18 (E.D.N.Y. Sept. 24, 2014) (finding a reasonable consumer could be misled where "the small print disclosures on the front and back of the check were not conspicuous and contradict each other; and how the descriptions on Ocwen's mortgage statements did not clearly indicate the source of the charges.)

The deceptive and misleading acts equal or exceed what has been sufficient for a plaintiff to show at the pleading stage. *Koenig v. Boulder Brands, Inc.*, 995 F.Supp.2d 274, 287–88 (S.D.N.Y. 2014) (holding that disclosure did not, as a matter of law, cure alleged misrepresentation because "a reasonable consumer might . . . focus on the more prominent portion of the product label that touts the product as 'Fat Free Milk and Omega–3s,' and overlook the smaller text that discloses the fat content on the front of the carton or the nutrition label"); *Stoltz*, 2015 WL 5579872, at \*37 (finding that a reasonable consumer could be misled because "Plaintiffs [here] allege that their expectation as to the nature of the Total 0% Products is inconsistent with the actual nature of the Total 0% Products; Plaintiffs allege that they believed the Total 0% Products contained, inter alia, no sugar or calories, whereas the Total 0% Products did, in fact, contain both calories and sugar.)

Though defendants argue "the full context of the whole packaging makes clear" that the Products are processed with pressure treatment, the labels show otherwise.  FAC, ¶ 41 ("It is deceiving to give a descriptive term to name a product which does not describe the product at the point of sale.").

D.  <u>Non-Cold Pressed and Heat Pasteurized Citrus Juices Renders "Cold Pressed" and "Never Heated" Misleading</u>

The FAC alleged that in addition to naming the Products as "cold press juice" despite the occurrence of the Pascalization step, it is also misleading because the component citrus juices are not made through being cold-pressed. ¶¶ 21-35, 68-69.  Further, because the citrus juices are treated with *thermal pasteurization*, defendants' argument that its products are "not cooked" are false and misleading.  *Langan v. Johnson & Johnson Consumer Companies*, 95 F.Supp.3d 284, 289 (D. Conn. 2015) (concluding that plaintiff's claim "though plausibly misleading, is technically true if interpreted in the light defendant suggests—that is, if "sunscreen ingredients" is understood to mean only the "active ingredients," apart from the rest of the product that combines with the active ingredients.")

This deception is no different from other actions where courts have found it is not unreasonable to expect a label's promises to comport with a product's composition.  *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029, 2015 WL 2168374, at *14 (S.D.N.Y. May 7, 2015) ("It is not unreasonable as a matter of law to expect that a product labeled "natural" or "all natural" contains only natural ingredients."); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F.Supp.3d 467, 474-475, 477 (S.D.N.Y. 2014) (rejecting dismissal based on misleading product names where "Plaintiff does not dispute that at least one ingredient in each Aveeno product is arguably natural, the case turns on whether the fact that most of the ingredients are synthetic means using the term 'natural' is deceptive."); *Wilson v. Frito-Lay N. Am., Inc.*, No. 12-cv-1586, 2013 WL 1320468, at *13 (N.D. Cal. Apr. 1, 2013) ("[A] reasonable consumer could interpret a bag of chips claiming to have been `Made with ALL NATURAL Ingredients' to consist exclusively of natural ingredients, contrary to the reality described in the nutrition box.").

8

Additionally, defendants' memorandum of law in support of the present motion, along with its second letter seeking a pre-motion conference, failed to address or rebut the issues relating to the non-cold pressed, heat pasteurized citrus juices.    The only possible conclusion is that defendants cannot adequately respond on this issue because it is correct.  *NML Capital, Ltd. v. Republic of Argentina*, No. 05-cv-2434, 2009 WL 1528535, at *1 (S.D.N.Y. May 29, 2009) (holding that defendant waived the argument by failing to raise it in its opposition to the plaintiffs' motion).

### E.  Raw and "Manifreshto" are Misleading

Consumers expect a juice product which is named "cold press juice," labeled raw and implied to be fresh ("Manifreshto") to be "one that is not processed or preserved" because "the occurrence of processing or preservation is not compatible with a fresh product."  FAC, ¶ 49; 21 C.F.R. § 101.95(a) (describing "fresh" as when "food is in its raw state and has not been frozen or subjected to any form of thermal processing or any other form of preservation, except as provided in paragraph (c) of this section."); 58 Fed. Reg. 3, 2401 at 2402-403, Terms that Describe Other Aspects of Food: "Fresh" and Related Terms (Jan. 3, 1993) (21 C.F.R. § 101.95)("if the term "fresh" were used to describe a pasteurized orange juice, that term would misbrand the product because when used in this context, the term implies that the food is unprocessed (e.g., fresh squeezed orange juice), when in fact it is a pasteurized food.").

Defendants' definition of raw is drawn from Merriam-Webster which defines it as "not cooked." Mem. At 2, 13.  However, this definition is wholly consistent with the FAC's description of how consumers understand "raw."  FAC, ¶¶ 55, 58 (reasonable consumers "understand raw in

the context of a food safety effect, i.e., thermal pasteurization to milk or grilling a hamburger"),
112 (describing "the long-held association of heat and raw, because since the beginning of time
and until recently, the main method used by humans preserve their food was fire.").

Because Merriam-Webster sorts definitions by listing the earliest known definition first,
rather than the use which is most common or popular, it is expected that in the earliest sense of the
word "raw," it was attributed a meaning as humans understood it in relation to food.  *See* Handbook
of Writing for the Mathematical Sciences, Nicholas J. Higham, p. 8 ("Order of definitions"),
Society for Industrial and Applied Mathematics (1998).

Additionally, the second definition of "raw" listed in defendants' dictionary is "being in or
nearly in the natural state : not processed or purified," which is in line with plaintiff's definition.
FAC, ¶ 54; 64 Fed. Reg. 225, 65669 at 65671, Hazard Analysis and Critical Control Point
(HACCP); Procedures for the Safe and Sanitary Processing and Importing of Juice; Availability
of New Data and Information and Reopening of Comment Period (November 23, 1999) (21 C.F.R.
Part 120) ("The agency [FDA] is aware that some consumers prefer to consume raw (i.e.,
unprocessed) juice.") (parentheses in original).

To accept defendants' definition would result in the absurd conclusion that it is not
misleading to describe their Products as raw, yet it would be misleading to label them as fresh.
FAC, ¶ 110.

Though defendants argue that a "reasonable consumer would not read the word
'Manifreshto,' along with the 'simple rules' listed below it, and believe that product is being
described as a 'fresh' juice that was not subject to any treatment," this overlooks that a consumer
is not merely seeing that panel and that they have already seen the front label claims of "cold

10

pressed juice" and "raw." FAC, ¶¶ 57, 103, 109-110.  *Belfiore v. Procter & Gamble Co.*, No. 14-cv-4090, 311 F.R.D. 29, 38, 2015 WL 5781541, at *35 (E.D.N.Y. Oct. 5, 2015) (to establish a prima facie case under GBL § 349, "The entire mosaic is viewed rather than each tile separately.") (citation and quotation omitted); *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ( "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial.").

Moreover, defendants incredulously argue that a reasonable consumer should have known that the Products were processed since the Products <u>lack</u> a warning label required of juice products where there has not been "at a minimum, a reduction in the pertinent microorganism" on the order of a "5-log (i.e., 100,000-fold) reduction," this means they were processed with pressure.  21 C.F.R. § 101.17(g)(7).  Mem. At 10.

That plaintiff and consumers would not be aware of complex juice regulations "do[es] not present the type of patently implausible claim that warrants dismissal as a matter of law based on the reasonable consumer prong." *Stoltz*, 2015 WL 5579872, at *38-39; *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F.Supp.2d 401, 407 (E.D.N.Y. 2004) ("[a] federal trial judge, with a background and experience unlike that of most consumers, is hardly in a position to declare" that reasonable consumers would not be misled. (noting that resolution of the issue may require "surveys, expert testimony, and other evidence of what is happening in the real world"). 65 Fed. Reg. 128, 41029 at 41030, Use of the Term "Fresh" for Foods Processed With Alternative Nonthermal Technologies; Public Meeting (July 3, 2000) (21 C.F.R. § 101.95).

Defendants' authorities which are intended to overcome plaintiff's argument do no such thing.  When the 9th Circuit's stated that "Rawness [of a "fresh or green vegetable"] can be

11

overcome only by the application of heat," food technology was not at the level it is today.  *Union Pacific Railroad Co. v. Ore-Ida Potato Products*, 252 F.2d 505, 508 (9th Cir. 1958) (defining fresh as "Newly produced, gathered, or made; hence stored or preserved.").

The parties' competing definitions – of raw, cold-pressed and fresh – weigh against a resolution of this action "on a Rule 12(b)(6) motion, which scrutinizes only the Complaint and the documents integral thereto." *Dependable Sales & Service, Inc. v. Truecar, Inc.*, No. 15-cv-1742, 2016 WL 79992, at *4 (S.D.N.Y. Jan. 6, 2016) (denying defendant's motion to dismiss because the "Complaint can be read to plausibly allege that the phrase "no haggled" is understood by lay consumers to mean that the given price is the actual price, and that no negotiation is required.").

F.  The Trademark Cases Relied on by Defendants Buttress Plaintiff's Argument

Defendants argue that "Manifreshto," a trademark, is not really a description of the unprocessed condition of the Products.  In support, defendants proffer a trio of implausible cases. In all three, where a fanciful name was claimed to be misleading, the courts correctly pointed the plaintiff to the smaller text next to the large and colorful text, which cleared things up as to what the product really was.  21 C.F.R. § 101.3(b) (stating that all products should have a straightforward "common or usual name" or an "appropriately descriptive term"); *McKinnis v. Kellogg USA*, No. 07-cv-2611, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) (noting that any ambiguity about whether the products contained fruit was dispelled because "In much smaller type next to the name ['FROOT LOOPS'] are the words 'SWEETENED MULTIGRAIN CEREAL.'"); *Werbel ex rel. v. Pepsico, Inc.*, 09-cv-04456, 2010 WL 2673860, at *3, *8 (N.D. Cal. July 2, 2010) ("Immediately below [the larger and colored text 'Cap'n Crunch's Crunch

12

Berries'] is a product description, which states: 'SWEETENED CORN & OAT CEREAL'");
*Rooney v. Cumberland Packing Corp.*, No. 12-cv-0033, 2012 WL 1512106, at *4 (S.D. Cal. Apr.
16, 2012) ("Defendants point to the nine locations on the Sugar in the Raw® box that state that the
product is natural cane turbinado sugar" while "Aside from the brand name, the word raw does not
appear on the packaging.").

The Products' misleading name – "cold pressed juice" offers no such shelter to the claims
that "Manifreshto," together with the other statements, gives the impression they are fresh and
have not been processed.

G.   The Fraud Claims are Viable

Not only have Plaintiffs satisfied Rule 8(a)'s requirements but they have also satisfied Rule
9(b)'s heightened requirements by adequately pleading the who, what, when, where, and
how of the alleged fraud. *United States ex rel. Polansky v. Pfizer, Inc.*, No. 04-cv-0704, 2009
WL 1456582, at *4 (E.D.N.Y. May 22, 2009) ("Rule 9(b) requires that a plaintiff set forth
the who, what, when, where and how of the alleged fraud.").

The "Who" refers to the defendants as    the entities   who manufactured, distributed,
advertised, marketed, and sold the Products  identified as "cold pressed juice" and "raw."  This
was done at grocery stores throughout the country though the Products are also carried in a high
percentage of the smaller food convenience stores, i.e., green grocers.  Defendants carried this
conduct out for at least the previous three years by using an assortment of words except for
"processing" on their labels, which would have told consumers their Products *may have been* cold-
pressed, raw and fresh, but what was being purchased was nothing more than processed juice,

13

available on the interior of the store as opposed to being located in the entry areas and proximate to the produce.

## II. THE FAC PLAUSIBLY ALLEGES DECEPTION BASED ON PREDOMINANT INGREDIENTS IN SEVERAL VARIETIES

Defendants claim that it "is simply implausible" for plaintiff and reasonable consumers to believe the "ingredients at the top are the predominant ones in the juice" even though several reasons are offered why this would be expected. Def. Mem. at 13 citing FAC ¶ 65, 67.

First, the FAC asserted the Products' "premium price, so the consumer will think 'you get what you pay for.'" Though defendants categorize this belief as unreasonable, it is a reasonable belief because "the amount of each juice ingredient ha[s] a material bearing on the value and consumer acceptance of the juice." 56 Fed. Reg. 127, 30452 at 30455-56, Common or Usual Name for Nonstandardized Foods (July 2, 1991) (21 CFR Parts 101 and 102) (recognizing that it is misleading for a juice's name to suggest it contains more of an expensive juice than it actually does).

The second reason was the absence of a non-misleading product name which would have told plaintiff and consumers what they were *buying*. Most consumers have seen juices with names like "raspberry flavored fruit juice blend" which they understand to describe a blend of juices where raspberry was the most distinctive flavor. 58 Fed. Reg. 3, 2897 at 2918, Common or Usual Name for Nonstandardized Foods (Jan. 3, 1993) (21 CFR Parts 101 and 102).

In the absence of a product name, consumers expect that "represented juices should be named on the label in the order of the predominance of the juice, i.e., the juice that is present in the largest amount should be listed first." 56 Fed. Reg. 127, 30452 at 30462.

14

The third reason why plaintiff and reasonable consumers would expect the first-listed juice to be most predominant was because other label elements including the "Raw and Organic" icon were given the color corresponding to that juice.  Reasonable consumers are familiar with arugula, chard and beets being light green, shiny red and a darker red, respectively.  FAC, ¶ 67.

Defendants cite extensively to *Workman*, where the front label vignette depicted pumpkin, quinoa and yogurt yet mostly consisted of "apple, pear or banana puree."  141 F.Supp.3d 1032 at 1033.

According to defendants, the Products' ingredient lists are sufficient to dispel any ambiguity "about the meaning of the order of the featured ingredients on the front of the packaging."  Mem. At 19.

At bar, defendants' front labels did not merely contain some "featured ingredients," but rather, it contained *all* the juice ingredients.  *FAC*, ¶ 65 (The front labels and back panel ingredient lists of the Arugula, Chard and Beets list the identical eight, eight and five juices, respectively).

Just because the ingredients may be listed in descending order by weight on the back panel doesn't obviate the requirement not to mislead consumers by misrepresenting their predominance on the front labels.  56 Fed. Reg. 127, 30452 at 30462, Common or Usual Name for Nonstandardized Foods (July 2, 1991) (21 CFR Parts 101 and 102) (concluding that to prevent deception, "lists of ingredients on labels, whether as part of the ingredient list, part of the common or usual name, or elsewhere on the label [the FDA's position has consistently been that they] are to be in descending order of predominance.").

Regardless of the location of ingredients, "[T]he label should not imply to a consumer at the time of purchase that the content of that juice is greater than is actually the case."  *Reynolds v.*

15

*Wal-Mart Stores, Inc.*, No. 4:14-cv-381, 2015 WL 1879615, at *12 (N.D. Fla. Apr. 23, 2015) (denying defendant's motion to dismiss because plaintiff's claim – the products purported to be comprised of "entirely cranberry and pomegranate juice" despite being mostly other, cheaper juices – was plausible).

By rearranging the ingredient lists and presenting it on the front labels, defendants are representing that the first-listed ingredients are present in larger amounts than they are.  This renders *Workman* inapposite, because the puree pouches and fruit bars there did "not display any affirmative misrepresentations" as the products identified here do.  141 F.Supp.3d 1032, 1035 (N.D. Cal. 2015) (finding that where the products do not contain affirmatively false representations, a reasonable consumer can "expect that that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.").

Additionally, the products in *Workman* were purees and not juices.  Puree is "a cooked food, especially a vegetable or fruit, that has been put through a sieve, blender or the like" while juice is "the liquid obtained from or present in fruit or vegetables."[1]  The differences in food types means that consumer expectations are different with respect to how these products are identified.

Turning to "common sense," defendants claim that "few consumers would want to drink a juice that tastes primarily of 'arugula' or 'chard' (as opposed 'lemon' or 'ginger' or 'cucumber')."  There is no reason to think that a juice primarily made of undiluted lemons or ginger, each which their own unique flavor profiles (sour and spicy), would be more or less desired than one made from leafy greens.

---

[1] http://www.dictionary.com/browse/puree
https://en.oxforddictionaries.com/definition/juice

16

Defendants do not acknowledge however that (i) plaintiff purchased the Beets Product and (ii) whether a consumer desires to drink a juice which contains more beets, arugula or chard than any other ingredient is a question of fact, not properly suited to resolution on a motion to dismiss. Moreover, unlike *Workman*, the ingredient lists do not "confirm[s] other representations on the packaging," but rather, refute them. *FAC*, ¶¶ 13-14.

## III.   DEFENDANTS CHARACTERIZE LEGAL ARGUMENT AS JUDICIAL ADMISSIONS

Defendants erroneously invoke the concept of "judicial admissions" to attribute background knowledge of the subject matter to plaintiff personally.  Mem. At 16 ("Plaintiff has included numerous allegations in his complaint making clear that he could *not* have plausibly believed that the Blue Print juices he bought were *untreated* cold press juices"); *New York State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 97 n. 7 (2d Cir.1998) (describing "judicial admissions, which are statements of fact rather than legal arguments made to a court."); *Rosen v. Brookhaven Capital Management, Co., Ltd.*, 194 F. Supp. 2d 224, 229 (S.D.N.Y. 2002) (noting that "factual descriptions are not admissions" of the type which a plaintiff is bound to, such as an express stipulation of fact).

According to defendants, the FAC's description of the cold-pressed juice industry means that somehow plaintiff had knowledge of these facts prior to his purchase of the Products.  Mem. At 16 citing FAC ¶¶ 12-13.  "Based on these facts, he almost certainly would have known that BluePrint juices are pressurized to allow them to have extended shelf-life to be safely sold in grocery stores." Courts are quickly able to distinguish "clear and unambiguous admission[s] of fact which have a binding effect on a party" and those statements which are relevant to legal

17

theories, factual context or pleading in the alternative.  *Maurizio v. Goldsmith*, 84 F. Supp. 2d 455, 464 (S.D.N.Y. 2000).

Though F.R.C.P. 8(e)(2) permits a plaintiff is permitted to plead in the alternative, the paragraphs cited by defendants are intended "to simply serve the atmosphereic purpose of shedding light on [defendant's] motive to take the action that it allegedly took" – to use high pressure Pascalization, not disclose it on the labels and appeal to consumers "seeking different kinds of juice products."  *Marketplace LaGuardia Ltd. P'Ship v. Harkey Enterprises, Inc.*, No. 07-cv-1003, 2008 WL 905188, at *7 (E.D.N.Y. Mar. 31, 2008) (recognizing that plaintiff's allegations provided context for defendant's actions – economic advantage – which precluded stating a claim for prima facie tort, which requires that "malevolence is the sole motive" for the otherwise unlawful act.).

Here, ¶¶ 10-14 of the FAC (i) show why cold-pressed juice is valued by consumers, (ii) identify features of the "emergence of the cold-pressed juice market" and (iii) indicate why cold-pressed juice is "difficult to sell on a wide scale."  Defendants use high pressure Pascalization to overcome the obstacles mentioned in ¶13, yet mislead consumers with respect to the occurrence of that process by not including it on the label.  FAC, ¶¶ 15, 40-41.

Nowhere does the FAC allege that Plaintiff, at the time of purchase, knew of FDA regulations requiring  Here, Plaintiff has directly and expressly alleged that he was deceived by the falsehoods and misrepresentations contained on the Products' labels which he viewed and suffered injury by payment of a price premium

## IV.  PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF

Defendants argue "there is no threat of future injury to Plaintiff" because he stopped buying the Products and lacks standing to seek an injunction. Mem. 23. Although "[i]t is true that a plaintiff seeking prospective relief must show that he or she is 'likely to suffer future injury' from the defendant's conduct," "courts have consistently held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer." *Ackerman v. Coca-Cola Co.*, No. 09-cv-395, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013). As that court explained, "[t]o hold otherwise would 'effectively bar any consumer who avoids the offending product from seeking injunctive relief.'" *Ackerman*, 2013 WL 7044866, at *15 n.23.

Plaintiff seeks to be relieved from Defendants' continuing misleading and deceptive practices in the future, which is no more truthful today than when plaintiff first discovered the alleged deception. 2013 WL 7044866, at *15 n.23; *see also*, *e.g.*, *Koehler v. Litehouse, Inc.*, No. 12-cv-04055, 2012 WL 6217635, at *6–7 (N.D. Cal. Dec. 13, 2012) (plaintiff had standing for injunctive relief claim even though he did not intend to purchase the product as advertised).

## CONCLUSION

Though "a party may amend its pleading only with the opposing party's written consent or the court's leave" after the expiration of time for amendment as a matter of course, the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[T]he 'permissive standard' of Rule 15 'is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015).

19

Plaintiff has not had an opportunity to amend his pleading in response to a Court order evaluating the sufficiency of his allegations. As the Second Circuit observed, "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley*, 797 F.3d at 190.

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss in its entirety or in the alternative, grant leave to amend or dismiss without prejudice.

Dated:  February 14, 2018

                                        Respectfully submitted,

                                        Levin-Epstein & Associates, P.C.

                                         /s/ Joshua Levin-Epstein
                                        Joshua Levin-Epstein
                                        1 Penn Plaza, Suite 2527
                                        New York, NY 10119
                                        Tel: (212) 792-0046
                                        Fax: (212) 563-7108
                                        joshua@levinepstein.com

1:17-cv-5191(ARR)(MRL)
United States District Court
Eastern District of New York

Josh Davis, individually on behalf of himself and all others similarly situated,

                       Plaintiff,

      - against -

The Hain Celestial Group, Inc. and Hain Blueprint, Inc.,

                       Defendants

---

Memorandum of Law in Opposition
to Defendants' Motion to Dismiss
the First Amended Complaint

---

Levin-Epstein & Associates, P.C.
1 Penn Plaza
Suite 2527
New York, NY 10119
Tel: (212) 792-0046
Fax: (212) 563-7108
joshua@levinepstein.com

---

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  February 14, 2018

                       /s/ Joshua Levin-Epstein
                      Joshua Levin-Epstein