UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Josh Davis, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>The Hain Celestial Group, Inc. and Hain Blueprint, Inc.,<br><br>    Defendants. | Case No. 1:17-cv-5191(ARR)(MRL)<br><br>Hon. Allyne R. Ross |

# REPLY IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT

**JENNER & BLOCK LLP**

Kenneth K. Lee (NY Reg. No. 4056750)
klee@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Tel.: (213) 239-5100
Fax: (213) 239-5199

*-and-*

Dean N. Panos (*pro hac vice* pending)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
Fax: (312) 527-0484

*Attorneys for Defendants*
The Hain Celestial Group, Inc. and Hain Blueprint, Inc.

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT ..........................................................................................................................2

    I.    BluePrint's Cold Pressed Juices Would Not Likely Deceive a Reasonable Consumer. ......................................................................................2

        A.    Plaintiff's Case Must Be Dismissed Under the Reasonable Consumer Standard Because the BluePrint Juices Labeling Is Factually Accurate. ...................................................................................2

        B.    Even If This Court Applied the "Finicky Connoisseur" Standard, Plaintiff's Claims Would Still Fail Because They Are Implausible. ......................................................................................4

    II.    Plaintiff's Remaining Arguments Are Equally Meritless. ..................................6

        A.    Plaintiff's Arguments on "Raw" and "Manifreshto" Are Nonsensical and Fail by His Own Admissions. .......................................6

        B.    Plaintiff's Lemon Juice Argument is Bare, Unsupported Speculation. ............................................................................................8

        C.    Plaintiff Does Not Address Scienter in His Motion to Dismiss. …..................................................................................10

        D.    Plaintiff's Argument on the Predominance of the Fruits and Vegetables Listed on the Front of the Bottle Fails Under the Reasonable Consumer Standard. ............................................................11

        E.    Plaintiff's Citation to a Single Outlier Case Does Not Save His Injunctive Relief Claim. ...............................................................12

CONCLUSION.....................................................................................................................13

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ackerman v. Coca-Cola Co*,
  No. 09-cv-00395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010)............................................12

*Albert v. Blue Diamond Growers*,
  151 F. Supp. 3d 412, 418 (S.D.N.Y. 2015)...........................................................................13

*Belfiore v. Procter & Gamble Co.*,
  No. 14-cv-4090, 311 F.R.D. 29, 2015 WL 5781541 (E.D.N.Y. Oct. 5, 2015).........................7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................................9

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,
  757 F.2d 523 (2d Cir. 1985)....................................................................................................5

*Buonasera v. Honest Co., Inc.*,
  208 F. Supp. 3d 555 (S.D.N.Y. 2016).............................................................................12, 13

*Butterfield-Bajinan v. City of New York*,
  No. 16-CV-5919 (RJS), 2017 WL 4045175 (S.D.N.Y. Sept. 11, 2017) ..................................9

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013).................................................................................................2, 7

*Henderson v. Gruma Corp.*,
  No. 10-04173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) .................................................3

*In re: 100% Grated Parmesan Cheese Marketing & Sales Practices Litig.*,
  275 F. Supp. 3d 910 (N.D. Ill. Aug. 24, 2017) .....................................................................11

*Koenig v. Boulder Brands, Inc.*,
  995 F.Supp.2d 274 (S.D.N.Y. 2014).......................................................................................4

*Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*,
  478 F. App'x 679 (2d Cir. 2012) ..........................................................................................10

*Mantikas v. Kellogg Co.*,
  No. 16-2552, 2017 WL 2371183 (E.D.N.Y. May 31, 2017)...............................................2, 3

*Marketplace LaGuardia Ltd. P'ship v. Harkey Enterprises, Inc.*,
  No. 07-CV-1003 (CBA), 2008 WL 905188 (E.D.N.Y. Mar. 31, 2008)...................................6

*McKinnis v. Kellogg USA*,
  No. CV07-2611ABC(RCX), 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007)...........................8

*Medrano v. Margiotta*,
  No. CV153097JMAARL, 2017 WL 886986 (E.D.N.Y. Feb. 16, 2017) .................................10

*Missel v. Cty. Of Monroe*,
  351 Fed. App'x 543 (2d Cir. 2009)......................................................................................9

*New Phone Co. v. New York City Dep't of Info. Tech. & Telecommunications*,
  No. 03 CV 3978 JG KAM, 2006 WL 6908254 (E.D.N.Y. Aug. 25, 2006) .............................8

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016)...............................................................................................13

*Red v. Kraft*,
  No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012).................................................3

*Riva v. Brasseur*,
  No. 15-2554, 2016 WL 9650983 (1st Cir. Sept. 12, 2016)...................................................9

*Roberts v. New York*,
  No. 1-12-CV-0046 MAD/CFH, 2015 WL 1285723 (N.D.N.Y. Mar. 20, 2015)......................8

*Rooney v. Cumberland Packing Corp.*,
  No. 12-CV-0033-H DHB, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) ..............................8

*Rosen v. Brookhaven Capital Mgmt., Co.*,
  194 F. Supp. 2d 224 (S.D.N.Y. 2002).................................................................................6

*Sitt v. Nature's Bounty, Inc.*,
  No. 15-CV-4199 (MKB), 2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016).......................12, 13

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
  No. 14-CV-3826 MKB, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ................................4

*Total Equity Capital, LLC v. Flurry, Inc.*,
  No. 15-CV-4168 (JMF), 2016 WL 3093993 (S.D.N.Y. June 1, 2016) ................................10

*Triumph Const. Corp. v. New York City Council of Carpenters Pension Fund*,
  29 F. Supp. 3d 373 (S.D.N.Y. 2014)...................................................................................5

*United States ex rel. Polansky v. Pfizer, Inc.*,
  No. 04-cv-0704, 2009 WL 1456582 (E.D.N.Y. May 22, 2009)...........................................10

*Werbel ex rel. v. Pepsico*, Inc.,
  No. C 09-04456 SBA, 2010 WL 2673860 (N.D. Cal. July 2, 2010) .....................................8

*Workman v. Plum Inc.*,
    141 F. Supp. 3d 1032 (N.D. Cal. 2015) ............................................................................11, 12

*Yamashita v. Scholastic, Inc.*,
    No. 16-CV-9201 (KBF), 2017 WL 74738 (S.D.N.Y. Jan. 5, 2017) ..........................................9

**OTHER AUTHORITIES**

Fed. R. Civ. P.  9 .............................................................................................................................11

Fed. R. Civ. P. 12 ...........................................................................................................................9

## **INTRODUCTION**

Plaintiff's opposition brief confirms that his lawsuit should be dismissed. He admits that Hain BluePrint's "cold pressed" juices are in fact cold pressed: they are made by crushing vegetables and fruits to extract juices from them. Plaintiff also does not offer any indication that a reasonable consumer would read the phrase "cold pressed" to mean anything other than what it says, *i.e.*, the juice was made by cold pressing the fruits and vegetables. In short, there is nothing deceptive about the labeling of the BluePrint cold pressed juices.

Despite these concessions in his opposition, Plaintiff insists that he was misled by the term "cold pressed" by invoking his own idiosyncratic and subjective understanding of that term: he claims that it refers to the "final consumable form as opposed to their condition at an intermediate stage of production." In other words, Plaintiff says that his own definition of "cold pressed" means "cold pressed but without any pressurization treatment to combat bacteria," and that it was misleading to use that term because it conflicted with his subjective understanding of it. But under New York law, the reasonable consumer standard applies. And a reasonable consumer would read "cold pressed" to mean what it says, and would not try to parse it and categorize into an abstract "final consumable form" vs. "intermediate state of production" paradigm.

Perhaps recognizing that his claim does not pass muster under the reasonable consumer standard, Plaintiff appears to suggest that a finicky connoisseur of "cold pressed" juices would adopt his idiosyncratic definition of that term. But that argument fails because the reasonable consumer standard applies, not the finicky connoisseur. Even if that connoisseur standard applied, Plaintiff's claims still falters because his theory of the case is implausible. As his complaint acknowledges, such a person understands that cold pressed juices without any pressurization treatment are sold exclusively in juice stores (not in supermarkets, where Plaintiff bought his

BluePrint juices), last for a few days (not weeks on the shelves like BluePrint juices), and cost $9.99 or more (not $2.99 or $7.99, the prices paid by Plaintiff for the BluePrint juices).

Finally, Plaintiff's other challenges to "raw," "manifreshsto," and the order of vegetables and fruits on the front of the packaging are equally meritless, as detailed in the motion to dismiss.

## ARGUMENT

### I. BluePrint's Cold Pressed Juices Would Not Likely Deceive a Reasonable Consumer.

#### A. Plaintiff's Case Must Be Dismissed Under the Reasonable Consumer Standard Because the BluePrint Juices Labeling Is Factually Accurate.

Plaintiff's lawsuit fails for the simple reason that no reasonable consumer would be misled by the term "cold pressed" found on BluePrint juices' bottles. *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (noting that allegedly fraudulent activity must be "likely to mislead a reasonable consumer acting reasonably under the circumstances."). In his complaint as well as in his opposition, Plaintiff repeatedly admits that the BluePrint juices are in fact "cold pressed" — that is, they are subjected to extreme pressure to extract juices from vegetables and fruits. *See* Opposition ("Opp.") at 5 ("Products consumed may have been cold pressed" . . . . "juice which is first cold pressed . . ."); First Amended Complaint ("FAC") at ¶9 (noting that the first step in making the BluePrint juices is the "'cold-pressing' of the individual ingredients."); Original Complaint at ¶ 12 ("Cold pressing is the first main production step used to manufacture the Products.").

A reasonable consumer would read the term "cold pressed" and understand that to mean exactly what it says — the juice was made by cold pressing fruits and vegetables. As detailed in the motion to dismiss, courts routinely dismiss similar lawsuits where plaintiffs challenge accurate descriptions on packaging that merely refer to an ingredient or how the ingredient was made. *See Mantikas v. Kellogg Co.*, No. 16-2552, 2017 WL 2371183, at *4-5 (E.D.N.Y. May 31, 2017)

("WHOLE GRAIN" and "MADE WITH WHOLE GRAIN" were not misleading because they were "factually truthful statements regarding the [] ingredients."); *Henderson v. Gruma Corp.,* No. 10-04173, 2011 WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011) ("With Garden Vegetables" claim not misleading because dip in question "d[id] in fact contain vegetables that can be grown in a garden," including avocado powder, dehydrated onion, and garlic powder.) ; *Red v. Kraft,* No. 10-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012), *enforced*, 2012 WL 5502359 (C.D. Cal. Oct. 26, 2012) ("Made with Real Vegetables" not misleading because statement was factually true).

Plaintiff's claim fails for the same reason that the claims in *Mantikas*, *Henderson*, and *Red* did: the truth is not misleading. Plaintiff tries to distinguish these cases, all to no avail. Plaintiff, for example, argues that the high pressure treatment of the BluePrint juices is akin to grape juice fermenting into wine. That analogy misses by miles: wine and grape juice are entirely different products, with different chemical compositions, different histories, different drinking ages, different tastes, different purposes, and so forth. Here, the only difference between non-pressure treated cold pressed juice and pressure treated cold pressed juice is that the latter was treated to kill potentially harmful bacteria; otherwise, they are the exact same product (and the methodology for extracting the juice, which is the basis for the characterization, is exactly the same). Plaintiff has not offered any indication that a reasonable consumer would read "cold pressed" to mean anything beyond what it says, or that she would somehow interpret it to mean "cold pressed and without any pressure treatment to kill bacteria." Plaintiff also tries to distinguish the litany of analogous cases dismissing similar claims by arguing there were ambiguities that could have been resolved by the packaging in those cases. But the same could be said here because BluePrint juice

3

bottles — even assuming that the term "cold pressed" is ambiguous — disclose that they undergo pressure treatment to kill harmful bacteria.

Finally, the cases cited in Plaintiff's brief do not support his argument. Both *Koenig v. Boulder Brands, Inc.*, 995 F.Supp.2d 274 (S.D.N.Y. 2014) and *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 MKB, 2015 WL 5579872, at *19 (E.D.N.Y. Sept. 22, 2015) dealt with affirmatively misleading numerical claims on packages as to the level of fat and calories. The prominent claims on the front of the packages at issue in those cases could mislead consumers as to the true amount of fat and calories. Here, in contrast, the labeling of the BluePrint products does no such thing, as it simply calls the juice what Plaintiff admits that it is, cold pressed.

### B. Even If This Court Applied the "Finicky Connoisseur" Standard, Plaintiff's Claims Would Still Fail Because They Are Implausible.

In an implicit concession that BluePrint juices are in fact cold pressed and that he cannot prevail under the reasonable consumer standard, Plaintiff appears to suggest that the Court should apply the "finicky connoisseur" standard and view the product packaging through the lens of someone who is a "cold pressed" juice aficionado. Plaintiff attempts to alter the definition of "cold pressed" from the common-sense as well as dictionary definition of the term (the process of creating the juice by cold pressing the fruits and vegetables), and concoct a new definition that describes a product that is cold pressed but does not undergo any safety treatment.

As an initial matter, his argument fails because the reasonable consumer standard applies, not the "finicky connoisseur" standard. But even if such a standard did apply, his claims would still fail, as evidenced by Plaintiff's own allegations in his complaint. A cold pressed juice aficionado who adopts Plaintiff's idiosyncratic definition of "cold pressed" would know the difference between (i) a mass-produced, shelf-stable cold pressed juice that underwent pressure treatment and (ii) a cold pressed juice that did not undergo any such safety treatment. Such an

4

aficionado would know that cold pressed juice without any safety treatment are sold exclusively in juice bars that make and sell them, not at supermarkets where Plaintiff bought his juices. *Compare* FAC ¶ 12 (stating that cold pressed juices without any treatment are sold only at "specialized, stand-alone stores, directly to consumers as opposed to being sold by third-party vendors, (i.e., grocery stores)" *with* ¶¶ 90, 93 (stating he bought the BluePrint juices "at a grocery market in this District."). Likewise, an aficionado would know that untreated cold pressed juices are very expensive at "$10-12 per 12 ounces" (*id.* at ¶ 12), but Plaintiff admits he paid only $2.999 and $7.99 for his BluePrint juices. *Id.* at ¶¶ 90, 93. And an aficionado would know untreated cold pressed juice has a "[s]hort shelf-life of 3-5 days" and even "overnight shipping for such a highly perishable product" is "impracticab[le]" (*id.* at ¶ 13), yet Plaintiff admits that he picked out BluePrint juices from the shelf of a grocery store, which obviously means that they have extended shelf-life because they had to be shipped from a manufacturing facility somewhere. In other words, even if the "finicky connoisseur" standard applied, such a person would not have been misled by the term "cold pressed" because Plaintiff's own allegations make it clear that BluePrint juices are cold pressed juices that have been treated to ward off harmful pathogens.

Cornered into a box by his own complaint, Plaintiff now disowns his own allegations, labeling them as merely "atmospheric" or "factual context." But his argument is foreclosed by well-established precedent. *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding."); *Triumph Const. Corp. v. New York City Council of Carpenters Pension Fund*, 29 F. Supp. 3d 373, 380 (S.D.N.Y. 2014) (discussing a how factual pleadings are judicial admissions).

The authority cited by Plaintiff does not dictate otherwise. Indeed, as cited and quoted by Plaintiff, *Marketplace LaGuardia Ltd. P'ship v. Harkey Enterprises, Inc.*, is a prime example of how a party may plead themselves out of a claim, resulting in a dismissed complaint. *See Marketplace LaGuardia Ltd. P'ship v. Harkey Enterprises, Inc.*, No. 07-CV-1003 (CBA), 2008 WL 905188, at *8 (E.D.N.Y. Mar. 31, 2008) (dismissing prima facie tort claim because plaintiff was alleging conflicting facts in the "atmospheric" context rather than to support an alternative claim). Plaintiff admits he is in the same position as the plaintiff in *Marketplace LaGuardia*, but mistakenly argues that "atmospheric" facts are not binding, when in fact *Marketplace LaGuardia* stands for the opposite. *See* Opp. at 18 (admitting that Plaintiff is alleging "atmospheric" facts, not facts in the alternative). Plaintiff's other case, *Rosen v. Brookhaven Capital Mgmt., Co.*, 194 F. Supp. 2d 224, 229 (S.D.N.Y. 2002) dealt with the very specific question of whether describing individuals as "investment advisors" was a legal admission that meant a "investment advisor exemption" was met, and is not applicable. Plaintiff's allegations are not about legal admissions, but rather factual ones that result in Plaintiff pleading himself out of his claims.

## II. Plaintiff's Remaining Arguments Are Equally Meritless.

### A. Plaintiff's Arguments on "Raw" and "Manifreshto" Are Nonsensical and Fail by His Own Admissions.

Plaintiff's arguments on "raw" and "Manifreshto" fail due to his own admissions. First, Plaintiff himself admits that the dictionary definition of "raw" as "not cooked" is "wholly consistent with the FAC's description of how consumers understand 'raw.'" Opp. at 9 ("[R]easonable consumers 'understand raw in the context of a food safety effect, i.e., thermal pasteurization to milk or grilling a hamburger'") (quoting FAC at ¶¶55, 58); *see also* FAC at ¶112 (discussing the "long-held association of heat and raw."). This alone should end the inquiry, as

Plaintiff never alleges that the BluePrint juices are cooked. In sum, there is simply nothing misleading about the term "raw" because it is undisputed that the juices were not cooked.

Despite agreeing multiple times that raw means not cooked with heat, Plaintiff argues that it would still nonetheless be "misleading" to describe the BluePrint juices as "raw" because it would lead to the "absurd conclusion" that something could be raw but not fresh. There are ample reasons why this argument is misguided. As an initial matter, common sense undermines his claim. A piece of fruit that has been sitting outside for weeks may be inedible, moldy, and not fresh, but it is still raw. There is nothing preventing something from being raw but not fresh. Plaintiff also offers an alternative definition of "raw" — "completely unprocessed" — but that definition makes little sense here. A cold pressed juice that did not undergo any pressure treatment arguably is not "completely unprocessed" because the fruits and vegetables had to be processed through pressure to make the juice. Indeed, the "processing" involved for cold pressing fruits and vegetables (exertion of pressure) is the same as the high Pascalization pressure to kill bacteria (exertion of pressure).

Plaintiff also falters in trying to argue that the whimsical trademark term "Manifreshto" is misleading. As the cases Plaintiff himself cites point out, when evaluating a package for potentially misleading terms, the "entire mosaic is viewed rather than each tile separately." *Belfiore v. Procter & Gamble Co.*, No. 14-cv-4090, 311 F.R.D. 29, 38, 2015 WL 5781541, at *35 (E.D.N.Y. Oct. 5, 2015) (further citations omitted); Opp. at 11; *see also Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."). BluePrint never uses the word "fresh"; rather, it uses the trademarked term "Manifreshto," which is a playful take on the term "manifesto." That becomes clear because right below the term "Manifreshto" are a number

7

of "simple rules" that BluePrint follows in making the juices. And in case there was any ambiguity, the BluePrint bottles repeatedly disclose that the juices underwent pressurized treatment to fight dangerous pathogens.

Finally, Plaintiff's attempt to distinguish the authorities cited in the motion to dismiss is off the mark. As admitted in the opposition, where other text on packages explains a pun or trademark, the trademarked term is not misleading. Opp. at 12 ("[T]he courts correctly pointed the plaintiff to the smaller text next to the large and colorful text, which cleared things up as to what the product really was."). This is consistent with *Rooney v. Cumberland Packing Corp.*, No. 12-CV-0033-H DHB, 2012 WL 1512106, at *4 (S.D. Cal. Apr. 16, 2012), *Werbel ex rel. v. Pepsico*, Inc., No. C 09-04456 SBA, 2010 WL 2673860, at *3-5 (N.D. Cal. July 2, 2010), and *McKinnis v. Kellogg USA*, No. CV07-2611ABC(RCX), 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007), all of which came to similar conclusions: trademarks and puns are not misleading when the overall context of the package eliminates any ambiguity. Here, it is undisputed that the BluePrint bottles disclose that the juices undergo pressure treatment, and that "Manifreshto" is a play-on-word of the term "manifesto."

    **B.**  **Plaintiff's Lemon Juice Argument is Bare, Unsupported Speculation.**

Plaintiff argues that the lemon juice in the bottle was not cold pressed, but he cannot rely on rank speculation to avoid a motion to dismiss. In claiming that lemon juice must have been thermally treated and processed (which is flat-out false), Plaintiff piles fact-free assumptions upon incorrect speculations upon dubious inferences. FAC at ¶¶21-35. The only thing missing are actual factual allegations. Courts have routinely held that such speculation does not rise to the level of a plausible claim. *See, e.g.¸ Roberts v. New York*, No. 1:12-CV-0046 MAD/CFH, 2015 WL 1285723, at *1 (N.D.N.Y. Mar. 20, 2015) (facts alleged in complaint must rise above

8

speculative level); *New Phone Co. v. New York City Dep't of Info. Tech. & Telecommunications*, No. 03 CV 3978 JG KAM, 2006 WL 6908254, at *28 (E.D.N.Y. Aug. 25, 2006) (recommending dismissal of claim based on "unlikely speculation").

Plaintiff implies that the BluePrint juices cannot be "raw" because it also contains "organic lemon," which he guesses was subject to "thermal pasteurization." *See* FAC ¶¶ 22-34. He first incorrectly says that the ingredient list declares the last ingredient as "lemon juice" when the packaging states "organic lemon"; he then assumes the "lemon juice" must be "not from concentrate" based on no factual foundation; he then speculates that an "extraction machine" (whatever that may be) was used for the lemons without stating any facts to support such a claim; he surmises that "screening, filtration, centrifugation and hydro clones" methods were used without explaining why that is supposedly the case; and then he finally believes that "it is probable that defendants use lemon juice from third parties," again without pointing to any facts. This Court should not accept such speculative assertions that have no basis in specific factual allegations. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level"); *Missel v. Cty. Of Monroe*, 351 Fed. App'x 543, 546 (2d Cir. 2009) (speculative assertions alone, without any factual allegations, not enough to state a claim).

There are no actual facts about lemon juice or lemons within the entirety of the complaint, and this Court is not required to accept conjecture or speculation as true. *See Riva v. Brasseur*, No. 15-2554, 2016 WL 9650983, at *1 (1st Cir. Sept. 12, 2016) ("The court was not required to accept Riva's conjectures as true for the purpose of deciding the Rule 12(b)(6) motion."); *Butterfield-Bajinan v. City of New York*, No. 16-CV-5919 (RJS), 2017 WL 4045175, at *5 (S.D.N.Y. Sept. 11, 2017) ("Without a factual basis for her beliefs, though, Butterfield-Bajinan's

9

allegations are mere legal conclusions, which the Court is not required to accept."); *Yamashita v. Scholastic, Inc.*, No. 16-CV-9201 (KBF), 2017 WL 74738, at *1-2 (S.D.N.Y. Jan. 5, 2017) ("Because the complaint does not plead sufficient facts to support its claims beyond mere speculation, defendant's motion is granted. . . . The complaint contains so few factual allegations it is nothing more than a fishing expedition.").

        **C.**     **Plaintiff Does Not Address Scienter in His Motion to Dismiss.**

Plaintiff simply declines to address the argument about the lack of scienter in his common law fraud claim. He does not explain the lack of scienter allegations in the complaint or state how scienter could be inferred from the allegations in the complaint. This failure to address the authority and arguments in the motion to dismiss merits dismissal of the common law fraud claim. *See Medrano v. Margiotta*, No. CV153097JMAARL, 2017 WL 886986, at *7 (E.D.N.Y. Feb. 16, 2017), report and recommendation adopted, No. 15CV3097JMAARL, 2017 WL 875830 (E.D.N.Y. Mar. 3, 2017) ("Plaintiffs do not address Defendants' position . . . Plaintiffs also fail to address the statutory authority cited to by Defendants or cite to any authority of their own. In fact, Plaintiffs offer no opposition to Defendants' arguments at all . . . The Court therefore recommends that Plaintiffs' separation of power claim be dismissed.").

As stated in the motion to dismiss, Plaintiff's failure to allege scienter requires the dismissal of his common law fraud claim. *See, e.g.*, *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679, 681 (2d Cir. 2012) ("The complaint in this case does not ascribe to Goldman or TCW any particular motive for committing fraud beyond a general profit motive common to all corporations, which does not suffice."); *Total Equity Capital, LLC v. Flurry, Inc.*, No. 15-CV-4168 (JMF), 2016 WL 3093993, at *6 (S.D.N.Y. June 1, 2016) (lack of plausible scienter allegations mandated dismissal). The fact that Plaintiff's cited case, *United States ex rel. Polansky*

10

*v. Pfizer, Inc.*, No. 04-cv-0704, 2009 WL 1456582 (E.D.N.Y. May 22, 2009), does not mention scienter is irrelevant. The court in *Pfizer* did not reach the question of scienter because the complaint was found inadequate and largely dismissed on other grounds. Further, that case dealt with Rule 9(b) in the context of False Claims Act litigation, while cases cited by Defendants (such as *Wurttemberg v. Goldman, Sachs & Co.*) explicitly deal with New York common law fraud.

### D. Plaintiff's Argument on the Predominance of the Fruits and Vegetables Listed on the Front of the Bottle Fails Under the Reasonable Consumer Standard.

Plaintiff's arguments on the predominance of ingredients on the front of the package ignore the crucial question of whether a reasonable consumer would be misled by the packaging in question. Plaintiff again and again asserts the bald legal conclusion that the list of ingredients on the front of the BluePrint juices' packages are misleading because they are not in order of predominance, but Plaintiffs cite no reason for *why* this would be misleading. It is well understood that, when labeling is arguably ambiguous, the presence of the nutrition label will serve to resolve any ambiguity. *See In re: 100% Grated Parmesan Cheese Marketing & Sales Practices Litig.*, 275 F. Supp. 3d 910 (N.D. Ill. Aug. 24, 2017) (nutrition panel resolved any ambiguity over "100% Grated Parmesan Cheese"); *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032 (N.D. Cal. 2015) (fact that depicted ingredients on box were not most prominent was not misleading when nutrition panel would resolve ambiguity). Plaintiff admits the ingredient list on the back of the package correctly lists the ingredients by weight. FAC at ¶66. Plaintiff provides no argument that a reasonable consumer would think that the ingredients on the front of the package — all in the same font, size, and color — are listed in the order of weight.

Plaintiff also fails to distinguish the *Workman* case, which is exactly on-point. In *Workman*, the front of the packaging prominently depicted (supposedly more expensive) fruits that were in the product but in smaller amounts than the (less expensive) fruits that were not depicted

11

at all in the packaging. *See Workman* at 1035. As noted by the *Workman* court, "any potential ambiguity could be resolved by the back panel of the products, which listed all ingredients in order of predominance, as required by the FDA. As our court of appeals stated in this context, 'reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.'" *Id.* (quoting *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir. 2008)). The exact same logic applies here, as any ambiguity about the order of the ingredients on the front of the packaging "could be resolved by the back panel." *Id.* That is exactly the same situation here: if a consumer was confused by the listing of the fruits and vegetables on the front of the packaging, she could review the ingredient list to see the order of weight by predominance.

Plaintiff tries to distinguish *Workman* by saying that it dealt with purees, whereas this case involves juices, but that distinction is irrelevant, and Plaintiff does not explain why such an immaterial distinction should make a difference to the widely-held rule that a consumer can clarify any ambiguity by looking at other parts of the packaging, including the ingredient list.

### E. Plaintiff's Citation to a Single Outlier Case Does Not Save His Injunctive Relief Claim.

Plaintiff's entire argument in support of his claim for injunctive relief relies on one outlier case, *Ackerman v. Coca-Cola Co.* Opp. at 19. While *Ackerman* has not explicitly been overruled, more recent cases show that federal courts in the Second Circuit — including the Eastern District — have declined to follow it. *E.g.*, *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 WL 5372794, at *7 (E.D.N.Y. Sept. 26, 2016) (declining to follow *Ackerman* because "the requirement that a plaintiff allege a risk of future injury in order to obtain injunctive relief is a constitutional requirement that all plaintiffs must satisfy."); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 565 (S.D.N.Y. 2016) ("Buonasera argues that he has standing to seek injunctive

12

relief based primarily on one case from the Eastern District of New York [*Ackerman*] . . . the Court declines to follow the reasoning in *Ackerman* as Second Circuit precedent dictates otherwise."); *Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 418 (S.D.N.Y. 2015) (Declining to follow *Ackerman* because "binding Supreme Court and Second Circuit precedent dictates otherwise").

As the above-cited district courts note, the Second Circuit has been explicit in its rulings that a plaintiff seeking injunctive relief must show that "she is likely to be harmed again in the future in a similar way."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) ("Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way.").  Like the plaintiffs in *Sitt, Buonasera,* and *Albert*, Plaintiff here does not have Article III standing to seek injunctive relief because no longer faces any reasonable risk of future injury in light of the fact that he now knows the supposed "truth" about BluePrint cold pressed juices.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's First Amended Complaint.

Dated:  February 21, 2018                                  Respectfully submitted,

JENNER & BLOCK LLP

By:___/s/ Kenneth K. Lee _____
Kenneth K. Lee (NY Reg. No. 4056750)

Attorneys for Defendants
The Hain Celestial Group, Inc. and Hain Blueprint, Inc.