UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
:
:
:
:
:
JOSH DAVIS, individually and on behalf of all others : 
similarly situated, :
:
:
               Plaintiff, :         17-cv-5191-ARR-RML
:
  -against- :
:          OPINION & ORDER
:
THE HAIN CELESTIAL GROUP, INC; and HAIN :
BLUEPRINT, INC., :
:
               Defendants. :
:
:
:
------------------------------------------------------------------- X

ROSS, United States District Judge:

       Plaintiff Josh Davis brings this putative class action against The Hain Celestial Group, Inc. ("Celestial") and Hain BluePrint, Inc. ("BluePrint") on behalf of himself and all others similarly situated, seeking monetary and injunctive relief. He alleges that defendants, which manufacture and sell juice, have engaged in deceptive product labeling in violation of N.Y. General Business Law sections 349 and 350. Plaintiff also brings claims for fraudulent misrepresentation and unjust enrichment based on the same alleged conduct. Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. In addition, defendants argue that the unjust enrichment claim must also be dismissed because it duplicates the other claims in the complaint. Finally, defendants argue that plaintiff lacks standing to seek injunctive relief. For the reasons discussed below, defendants' motion is granted in part and denied in part.

## BACKGROUND

BluePrint—a wholly owned subsidiary of Celestial Group—manufactures personal-sized juices and sells them to third-party sellers and directly to consumers. First Amended Complaint ¶ 3, ECF No. 11 ("Compl."). The two BluePrint product lines at issue in this case are their "BluePrint Cold Pressed" juices and their "BluePrint Organic" juices (individually, the "Cold-Pressed Line" and the "Organic Line"; collectively, the "Products"). Id. ¶¶ 2-3 & n.1.

Plaintiff bought two BluePrint beverages in 2016. Id. ¶¶ 90, 93. First, he bought a juice from the Cold-Pressed Line for roughly $7.99 at a local store. Id. ¶ 90. The front label said "beet, apple, carrot, lemon, ginger" and "raw." Id. ¶¶ 90-91. The side label listed the ingredients (in order of weight[1]) as "organic apple, organic carrot, organic beet, filtered water, organic lemon and organic ginger." Id. ¶ 65. Plaintiff alleges that the label led him to believe that the product was cold-pressed and raw, and—because beet was listed first on the front label and because the beverage itself was red—that the drink was predominantly made of beet juice (allegedly the most expensive ingredient). Id. ¶¶ 65, 91-92. Second, he purchased a juice from the Organic Line, titled "Lemon Yay," for roughly $2.99 at a local store. Id. ¶ 93. The back label stated that the beverage was "crafted with cold pressed juice." Id. Plaintiff contends that he relied on these representations in purchasing both drinks. Id. ¶¶ 91, 93.

Plaintiff filed the operative complaint in December 2017. Id. The complaint brings claims for (1) deceptive commercial practices and false advertising in violation of N.Y. General Business Law sections 349 and 350, id. ¶¶ 97-107, (2) fraudulent misrepresentation, id. ¶¶ 108-20, and (3) unjust

---

[1] Plaintiff does not expressly allege that the ingredients on the back label are in weight order but does allege that they are in order of predominance. Id. ¶¶ 66-67. Defendants do state that they are in weight order. Mem. of Law in Supp. of Defs.' Mot. to Dismiss Class Action Compl. 13, ECF No. 15-1 ("Defs.' MTD"). This is consistent with federal regulation, which requires that ingredients "be listed by common or usual name in descending order of predominance by weight on either the principal display panel or the information panel." 21 C.F.R. § 101.4(a)(1).

enrichment, id. ¶¶ 121-22. Specifically, plaintiff alleges that labels would mislead a reasonable consumer and that he, in fact, was misled. Id. ¶¶ 99-106. Further, he alleges that defendants had an affirmative duty to disclose that "the Products were processed" and that "their definition of a raw product excludes products which are fresh." Id. ¶ 110. Finally, he alleges that defendants improperly obtained profits that they must disgorge to the plaintiff and class members. Id. ¶ 122.

Plaintiff's proposed class is "all consumers in all states who purchased any Products bearing any of the actionable representations [described in the Complaint] . . . during the statute of limitation periods." Id. ¶ 77. According to plaintiff, the Products share some or all of the following characteristics, which he alleges are fraudulent and misleading. Id. ¶ 4.

First, the Cold-Pressed Line uses the terms "Cold Pressed Juice" or "Cold Pressed Juice Beverage" on the front label. Id.[2] "Cold Pressed" also appears on one of the side panels, under which it says that "[t]he BluePrintMethod applies tons of hydraulic pressure to get the most out of our organic fruits and vegetables." Id. ¶ 52; Request for Judicial Notice in Supp. of Mot. to Dismiss Class Action Compl., Ex. F, ECF No. 15-8 ("Label Example").[3] Second, the Cold-Pressed Line uses the term "raw" on the front label, where it appears in a green circle that says "raw and organic," Compl. ¶ 65, and on the back label, which says that "drinking raw juice" helps maintain good health. Label Example. Third, the Cold-Pressed Line uses the term "Manifreshto" on the back label, id. ¶ 48, which is followed by "the simple rules [BluePrint] live[s] by." Label Example. One of those rules is that "[j]uice should never be cooked. Cooking juice reduces vitamins and live enzymes. Even 'flash'

---

[2] Plaintiff contrasts this to competitors' labels, which say "cold-pressed" rather than "cold pressed juice." Id. ¶ 38. The former, plaintiff says, merely identifies cold pressing as an "attribute of said products, instead of defining them as such." Id.

[3] Defendants have provided the complete label for the Arugula Kale juice from the Cold-Pressed Line. It is consistent with the snapshots plaintiff provides in his complaint and plaintiff does not dispute that it is an accurate reproduction of one of the labels at issue. When a plaintiff relies on a document (or, as here, a label) in drafting his complaint, it is appropriate for the court to consider that document in deciding a motion to dismiss. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

3

pasteurized means cooked." Compl. ¶ 46; Label Example. Fourth, the Cold-Pressed Line includes a vertical list of ingredients on the front label in large, bold text. Compl. ¶ 65; Label Example. The ingredients on the front label are not listed in the same order as they are on the side label. Compl. ¶¶ 65-66. For example, one juice says "arugula kale apple romaine celery cucumber lemon ginger" on the front label. Id. ¶ 65. On the side label, under the nutrition facts, it says: "Ingredients: organic juice from: organic vegetables (organic romaine, organic celery, organic arugula, organic cucumbers, organic kale), organic apple, organic ginger, organic lemon." Id.; Label Example. Fifth, the Organic Line's back label says that it is "crafted with cold pressed juice," which plaintiff alleges is impossible for a beverage containing only citrus juices. Compl. ¶¶ 21-34, 68-69.

Plaintiff alleges that the Cold-Pressed Line is made in the following way: First, the individual ingredients are "cold-press[ed]." Id. ¶ 9. "Cold pressing" means that several thousand pounds of pressure are applied to fruits and/or vegetables to extract their juice. Id. ¶ 10. This is in contrast to the traditional "centrifugal" method, in which spinning blades reduce the produce to juice. Id. The traditional method's spinning blades create heat that negatively affects the enzymatic and nutritional content of the end product. Id. Cold pressing avoids that effect. Id.

Juice that is cold pressed has a shelf life of three to five days. Id. ¶¶ 10, 13. To extend that shelf life beyond five days, comply with federal regulation, and kill potential bacteria, BluePrint subjects the juice to an additional round of pressure. Id. ¶¶ 15-16; Defs.' MTD 3-4.[4] This process is called "high pressure pascalization" and it does not involve heat (unlike pasteurization, another

---

[4] Federal regulation requires juice products sold at grocery and retail stores to be subjected to some form of control measure to reduce the risk of food hazard. Hazard Analysis and Critical Control Point (HACCP) Systems, 21 C.F.R. § 120.1 et seq.; Food & Drug Admin., Guidance for Industry: Questions and Answers on Juice HACCP Regulation at Q1, Q29-Q30 (Aug. 31, 2001) ("FDA Guidance"). This requirement does not apply to juices produced and sold directly to consumers at specialty stores, 21 C.F.R. § 120.3(j)(2)(ii); FDA Guidance at Q15, although such products must bear a warning label stating that the "product has not been pasteurized and, therefore, may contain harmful bacteria that can cause serious illness in children, the elderly, and persons with weakened immune systems." 21 C.F.R. § 101.17(g)(2)(ii).

method of preservation). Defs.' MTD 3-4. Once the juice has undergone this second round of pressure, it has a shelf life of six weeks. See Compl. ¶ 36; see also Defs.' MTD 4.

According to plaintiff, FDA regulations require that low-acid foods (i.e., those having a total pH of greater than 4.6) undergo heat processing. Compl. ¶ 18. Many of defendants' juice ingredients have pHs over 4.6, including beets, arugula, and kale. Id. ¶ 17. Plaintiff alleges that defendants avoid the requirement for heat processing by acidifying their products with lemon juice until the total pH is 4.6 or less. Id. ¶ 19-21 & n.5, 35 (noting that each ingredients list contains "organic juice from . . . organic lemon" or "organic lemon juice").[5] Further, plaintiff states that lemon juice cannot be obtained through cold pressing, in part because doing so would lead to "imprecise quantities" of peel and peel oil in the juice, which would in turn affect the flavor. Id. ¶ 23. Once the lemon juice is extracted, plaintiff says, it is pasteurized to "stabiliz[e]" it. Id. ¶ 30. According to plaintiff, "[i]t is probable that defendants use lemon juice from third parties." Id. ¶ 34.

In January 2018, defendants filed their motion to dismiss. Mot. to Dismiss, ECF No. 15. They argue principally that the complaint fails to state a claim under Rule 12(b)(6). Defendants also argue that plaintiff's unjust enrichment claim must be dismissed as duplicative of the other claims in the complaint. Defs.' MTD 15-16. According to defendants, an unjust enrichment claim is not available under New York law "where it simply duplicates . . . a conventional contract or tort claim." Id. (quoting Corsello v. Verizon New York, Inc., 967 N.E.2d 1177, 1185 (N.Y. 2012)). Lastly, defendants argue that plaintiff lacks standing to seek injunctive relief, because there is no danger that he will be deceived by defendants' alleged misrepresentations again in the future. Id. at 16-17.

---

[5] All of the juices at issue contain lemon juice, except for the Pineapple Apple Mint juice from the Cold-Pressed Line. Id. ¶ 21.

5

**DISCUSSION**

Defendants move to dismiss the complaint for failure to state a claim. In addition, they move to dismiss plaintiff's request for injunctive relief for lack of standing. For the reasons discussed below, defendants' motion to dismiss for failure to state a claim is granted in part and denied in part. Defendants' motion to dismiss plaintiff's request for injunctive relief for lack of standing is granted.

**I. Rule 12(b)(6)**

On a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the non-moving party. Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 113 (2d Cir. 2013). In deciding defendants' motion to dismiss, the court must therefore accept the facts alleged in plaintiff's amended complaint as true. The complaint's allegations "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Only "a plausible claim for relief survives a motion to dismiss." LaFaro v. N.Y. Cardiothoracic Grp., 570 F.3d 471, 476 (2d Cir. 2009). Thus, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

**A. N.Y. General Business Law Sections 349 and 350**

Two of plaintiff's theories under N.Y. General Business Law sections 349 and 350 survive defendants' motion to dismiss, while the remaining two theories must be dismissed. Specifically, plaintiff's theories relating to the alleged heat processing of lemon juice may proceed. See infra Section A.2. His theories relating to the high pressure processing step and the predominance (or lack thereof) of premium ingredients cannot continue. See infra Sections A.1 and A.3.

Under N.Y. General Business Law sections 349 and 350, "[d]eceptive acts or practices" and "false advertising" are unlawful "in the conduct of any business, trade or commerce." N.Y. Gen. Bus. § 349(a) (deceptive acts); id. § 350 (false advertising). To survive a motion to dismiss, plaintiff must allege statements that were "likely to mislead a reasonable consumer acting reasonably under the circumstances." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741, 745 (N.Y. 1995); see also Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013); Bowring v. Sapporo U.S.A., Inc., 234 F. Supp. 3d 386, 390 (E.D.N.Y. 2017). This is an objective inquiry. Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 126 (2d Cir. 2007).

Further, "in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial. . . . [T]he presence of a disclaimer or similar clarifying language may defeat a claim of deception." Fink, 714 F.3d at 742. The "entire mosaic [is] viewed rather than each tile separately." Belfiore v. Procter & Gamble Co., No. 14-cv-4090, 2015 WL 5781541, at *35 (E.D.N.Y. Oct. 5, 2015) (quoting *Time Warner Cable Inc. v. DIRECTV, Inc.*, No. 6-CV-14245, 2007 WL 1138879, at *4 (S.D.N.Y. Apr. 16, 2007)). If a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the court should ask whether the misleading element is ambiguous. If so, the clarification can defeat the claim. See In re 100% Grated Parmesan Cheese Mktg. & Sales & Practices. Litig., 275 F. Supp. 3d 910, 922 (N.D. Ill. 2017). This is because reasonable consumers understand that, with vague product descriptions, "the devil is in the details." Id. at 923 (quoting Workman v. Plum Inc., 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015)). In 100% Grated Parmesan Cheese, for example, the court found that the label—which said "100% Grated Parmesan Cheese"—was not misleading, because "the readily accessible ingredient panel[] on the product[] . . . disclose[d] the presence of non-cheese ingredients." Id.

### 1. Processing After Cold Pressing

Plaintiff argues that the Cold-Pressed Line's labels would mislead a reasonable consumer, because the labels create the impression that the juice "has not been processed after being cold pressed," id. ¶ 45, when in fact it has undergone processing in the form of high pressure pascalization.

Plaintiff points to various facts, which he alleges combine to create this misleading impression. First, the term "cold pressed juice," he says, suggests to the consumer that cold pressing is the last step in the production process. Id. ¶ 40. Second, reasonable consumers are unaware of non-thermal processing methods, so when they read that the juice is "raw," "never heated," and "never . . . cooked," they understand that to mean the juice has never been processed. Id. ¶¶ 46, 54. The use of the word "fresh" (embedded in "Manifreshto") reinforces the impression that the product has not been processed. Id. ¶¶ 48-50. Third, because consumers are unfamiliar with high pressure processing, they are likely to be confused and think that the references to "pressure" on the label refer to the initial cold pressing process, rather than the additional preservation process. Id. ¶¶ 51, 53. Comparing the Cold-Pressed Line to competitors' products compounds the confusion, plaintiff alleges. Defendants' juices are approximately two dollars more expensive than their competitors', which, plaintiff argues, falsely suggests that they are the superior product. Id. ¶ 39. And the competitors' products say only "cold pressed" on their labels, rather than "cold pressed juice," suggesting that that cold pressing is only an "attribute" of the competitors' products, but the definition of defendants' products. Id. ¶ 38.

Plaintiff's arguments, however, are unavailing. The label taken as a whole makes clear that the juice was subjected to pressure for food safety purposes. It states that "BluePrint uses pressure instead of heat to keep our beverages raw and safe." Id. ¶¶ 37, 52; Label Example. This language is prominently displayed, in the same or similar size font as the other text on side labels. Compl. ¶¶ 37, 52; Label Example. Even accepting plaintiff's allegation that consumers are not generally aware of non-thermal processing methods, the Cold-Pressed Line labels clearly indicate that such methods

8

exist. Contrary to plaintiff's assertion, a reasonable consumer would not conflate the two different rounds of pressure (the one that extracts the juice and the one that renders it shelf stable) and would understand that the juice had been subjected to pressure after the initial "cold pressing" step.

Furthermore, defendants' description of the juice as "cold pressed" is accurate. Plaintiff acknowledges that the components juice is cold pressed. Compl. ¶ 9. "Cold pressed" does not cease to be a truthful moniker for the juice simply because there were subsequent steps in the juice's production process. Nor are the words "raw" or "manifreshto" misleading in this context. A reasonable consumer would understand raw to mean uncooked—unheated, in other words. And a reasonable consumer would understand "manifreshto" to be referring to BluePrint's general attitude towards juice-making, as is clearly explained by the text immediately following that term. Id. ¶ 48; Label Example.

Plaintiff's arguments about the differences between BluePrint and its competitors are likewise unpersuasive. A reasonable consumer would not make the distinction plaintiff does between "cold pressed" and "cold pressed juice." Nor does the difference in price between BluePrint's and its competitors' juices render the product misleading. In fact, the broader context of plaintiff's BluePrint purchases cuts against his claim. As plaintiff himself pleads, cold pressed juice that is not subject to subsequent processing is generally sold in stand-alone stores, for approximately ten to twelve dollars, and has a shelf life of only three to five days. Id. ¶¶ 12-13. But plaintiff made his purchases from a local store (not alleged to be a specialty store), for three to eight dollars, and received a product with an evidently longer shelf life. Id. ¶¶ 90, 93. A reasonable consumer in his situation would not have expected to receive an unprocessed cold-pressed juice.

In sum, plaintiff's claim under N.Y. General Business Law sections 349 and 350 regarding the Cold-Pressed Line may not proceed on the theory that the labels misleadingly create the impression that the juice was not processed after being cold pressed.

9

### 2. Lemon Juice

#### (i) *Cold-Pressed Line*

Plaintiff also alleges that the product labels are misleading because a reasonable consumer would understand them to mean that none of the ingredients in the juice has been subject to thermal processing. Compl. ¶ 58. According to plaintiff, lemon juice cannot be cold pressed and must undergo thermal processing to stabilize it. See id. ¶ 23, 30. Defendants argue that this is "rank speculation" and "flat-out false." Reply in Supp. of Defs.' Mot. to Dismiss Class Action Compl. 8, ECF No. 17 ("Defs.' Reply"). Nevertheless, at the motion to dismiss stage, I must take the factual allegations pleaded in plaintiff's complaint as true. Plaintiff's statement that citrus juices must be subjected to thermal treatment is a factual statement. It may or may not be borne out, but I cannot discount it in deciding this motion.

The labels on the Cold-Pressed Line state that the juice is "never heated" and "not cooked," and that BluePrint "uses pressure instead of heat" to ensure food safety. Id. ¶¶ 37, 46, 52. Assuming the lemon juice is actually heated, then these statements are misleading. Plaintiff's claim under N.Y. General Business Law sections 349 and 350 regarding the Cold-Pressed Line may therefore proceed under the heat-treated lemon juice theory.

#### (ii) *"Crafted with Cold Pressed Juice"*

Finally, plaintiff alleges that the Organic Line, including the Lemon Yay juice that he purchased, is misleading because its labels say "crafted with cold pressed juice." Compl. ¶ 68.[6] According to plaintiff, all of the juice in the Organic Line is citrus, which cannot be cold pressed. Id. ¶ 69. Defendants respond that lemon juice *can* be cold pressed. See Defs.' Reply 8-10. As I have stated above, however, I must accept plaintiff's factual allegations as true at this stage of the

---

[6] In full, that portion of the label says, "We Keep It Real. We're talking the real deal, crafted with cold pressed juice made from real fruits and vegetables." Id. ¶ 69.

10

proceedings. Assuming citrus juices cannot be cold pressed, then the phrase "crafted with cold pressed juice" is misleading. A reasonable consumer would not know that citrus fruit cannot be cold pressed and would take the phrase "crafted with cold pressed juice" to mean that at least one of the ingredients in the Organic Line had been cold pressed. Plaintiff's claim under N.Y. General Business Law sections 349 and 350 regarding the Organic Line may therefore proceed under this theory.

### 3. Predominance of Ingredients

Plaintiff also alleges that the front labels on three of the Cold-Pressed Line juices—those whose front labels list arugula, chard, and beet first, respectively—are misleading because they "give the false impression [that] these more expensive ingredients are predominant." Compl. ¶ 65. The beet juice that plaintiff purchased, for example, lists beet first on the front, but the ingredients list on the side label reveals that beet is only the third-most predominant ingredient. Id. ¶¶ 65-66. This is misleading, plaintiff says, in light of the fact that (1) the juices are expensive, suggesting that they contain more of the premium ingredient(s) than the non-premium ingredients; (2) the juices do not have a product name—such as "chard-flavored vegetable juice blend"—that would highlight the fact that the premium ingredients are not the most predominant; and (3) the label and juice color correspond to the first-listed, premium ingredient. Id. ¶ 67.

Plaintiff's claim for deceptive practices and false advertising cannot survive on this theory. A reasonable consumer acting reasonably under the circumstances would not understand the front label to be listing the ingredients from most to least predominant. Consumers are accustomed to seeing a product's ingredients listed by weight under the nutrition facts—as they are here. See Defs.' MTD 13; Label Example. The ingredient lists thus clarify—in exactly the spot consumers are trained to look—that the premium ingredients are not the most predominant ingredients. No reasonable consumer could have been misled in light of this clarifying language. Cf. Fink, 714 F.3d at 742;

11

Workman, 141 F. Supp. 3d at 1035-36 (dismissing complaint where product listed expensive ingredients on front label but cheaper ingredients predominated).

### B. Fraudulent Misrepresentation

Plaintiff brings a claim for fraudulent misrepresentation covering the same allegedly misleading statements discussed above. Because plaintiff has failed to allege that defendants had the required scienter, his fraudulent misrepresentation claim must be dismissed.

To state a claim for fraudulent misrepresentation, "plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff[,] and resulting injury." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 291 (2d Cir. 2006) (quoting Kaufman v. Cohen, 760 N.Y.S.2d 157, 165 (App. Div. 2003)). "Because intentional [mis]representation is predicated on some act of fraud, a plaintiff must plead scienter, or fraudulent intent." Greene v. Gerber Prods. Co., 262 F. Supp. 3d 38, 73 (E.D.N.Y. 2017). A conclusory assertion of intent may be sufficient if it is "supported by facts giving rise to a strong inference of fraudulent intent." Id. (quoting Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 579 (2d Cir. 2005)). This inference "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Lerner, 459 F.3d at 290-91. The simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a defendants' "generalized motive to satisfy consumers' desires [or] increase sales and profits." See In re Frito-Lay N. Am., Inc. All Nat. Litig., No. 12-MD-2413, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013).

Plaintiff has made no allegation of scienter in his complaint, nor does he make any argument on this topic in his opposition to defendants' motion to dismiss. Mem. of Law in Opp'n to Defs.' Mot. to Dismiss the First Am. Compl. 13-14, ECF No. 16 ("Pl.'s Opp'n"). The closest plaintiff comes

to alleging fraudulent intent is his assertion that "[d]efendants knew that other juice products more accurately represented their products." Compl. ¶ 117. But even taking the facts in the light most favorable to plaintiff, that is not nearly enough to conclude that defendants had the requisite scienter for fraudulent misrepresentation. Plaintiff's fraudulent misrepresentation claim must therefore be dismissed.

### C. Unjust Enrichment

Plaintiff brings a claim for unjust enrichment on the basis that "[d]efendants obtained benefits and monies because the Products were not as represented, to the detriment and impoverishment of plaintiff and class members." Compl. ¶ 122. This claim must be dismissed, because it merely duplicates plaintiffs other claims based on the same alleged misrepresentations. See Corsello v. Verizon New York, Inc., 967 N.E.2d 1177, 1185 (N.Y. 2012). "[U]njust enrichment is not a catchall cause of action . . . . It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Id. Plaintiff's unjust enrichment claim is no different from his claims for false advertising or fraudulent misrepresentation. It must therefore be dismissed.

## II. Standing to Seek Injunctive Relief

Plaintiff seeks "preliminary and permanent injunctive relief" that "direct[s] defendant[s] to correct their practices to comply with the law." Compl. at 22. Because plaintiff has not demonstrated that he is likely to be injured by the defendants' conduct in the future, he lacks standing to seek an injunction.

Article III of the Constitution limits the jurisdiction of the federal courts to "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. "This limitation is effectuated through the requirement of standing." Cooper v. U.S. Postal Serv., 577 F.3d 479, 489 (2d Cir. 2009). Standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." Warth v.

13

Seldin, 422 U.S. 490, 498 (1975). "To satisfy the 'irreducible constitutional minimum' of Article III standing, a plaintiff must demonstrate (1) 'injury in fact,' (2) a 'causal connection' between that injury and the complained-of conduct, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" Strubel v. Comenity Bank, 842 F.3d 181, 187–88 (2d Cir. 2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).

A plaintiff does not necessarily have standing to seek injunctive relief, even when it is clear that he has standing to seek damages. See City of Los Angeles v. Lyons, 461 U.S. 95, 105-06 (1983); Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239 (2d Cir. 2016). "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." Lyons, 461 U.S. at 102 (quoting O'Shea v. Littleton, 414 U.S. 488, 496-97 (1974)) (alteration in original). Because a plaintiff in a false advertisement case has necessarily become aware of the alleged misrepresentations, "there is no danger that they will again be deceived by them." Elkind v. Revlon Consumer Prods. Corp., No. 14-2484, 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015); accord, e.g., Tomasino v. Estee Lauder Cos., 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014). Although some district courts have allowed claims for injunctive relief to proceed in similar circumstances, see, e.g., Belfiore v. Procter & Gamble Co., 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015); Ackerman v. Coca-Cola Co., No. 09-cv-395, 2013 WL 704866, at *15 n.23 (E.D.N.Y. July 18, 2013) (R. & R.), these cases are inconsistent with Article III and with Supreme Court and Second Circuit case law. Nicosia, 834 F.3d at 239; Buonasera v. Honest Co., 208 F. Supp. 3d 555, 564-65 & n.3 (S.D.N.Y. 2016) ("[T]he Court declines to follow the reasoning in Ackerman as Second Circuit precedent dictates otherwise.").

To the extent that plaintiff was deceived by defendants' products, he is now aware of the truth and will not be harmed again in the same way. He therefore lacks standing to seek an injunction.

## CONCLUSION

Defendants' motion to dismiss for failure to state a claim is granted in part and denied in part. Their motion is granted with regard to plaintiff's fraudulent misrepresentation and unjust enrichment claims, as well as plaintiff's request for injunctive relief. In addition, defendants' motion is granted with regard to plaintiff's N.Y. General Business Law claims as to his high-pressure-processing and predominance-of-ingredients theories. It is denied with regard to plaintiff's N.Y. General Business Law claims as to his heat-treated-lemon-juice theories.

So ordered.

Dated: April 3, 2018                                       s/ Allyne R. Ross
       Brooklyn, NY                                        Allyne R. Ross
                                                                            United States District Judge